# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

UNITED STATES OF AMERICA,

v.  CRIMINAL ACTION NO. 2:21-cr-00268

TYTUS LAMAAR SHIELDS

### MEMORANDUM OPINION

On December 19, 2022, before this court, Defendant Tytus Shields pled guilty to possessing a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), as charged in Count One of the Indictment filed against him. [ECF No. 38]. On March 16, 2023, he was sentenced to a term of 51 months imprisonment to run consecutively with his state sentence, followed by a 3-year term of supervised release. [ECF No. 48].

Mr. Shields appealed. On January 22, 2025, the Fourth Circuit vacated that sentence and remanded so that this court could "address," "acknowledge," and "engage" with Mr. Shields's non-frivolous argument for a downward variance. [ECF No. 59]; *United States v. Shields*, 126 F. 4th 356 (4th Cir. 2025).

Today, I resentenced Mr. Shields pursuant to the Fourth Circuit's mandate.[1] I now write in conjunction with that resentencing to consider the state of appellate review of district court sentencing. It is the duty of the district court to follow appellate court orders in sure fashion and explain their actions and reactions. The public greatly benefits from courts acting in such a manner, clearly communicating what the law is and how it is applied.

---

[1] I do not address Mr. Shields's arguments in this Memorandum Opinion. My discussion with counsel and statement of reasons for Mr. Shields's sentence are found on the record of the resentencing hearing.

I.  **BACKGROUND**

Historically, sentencing was almost entirely a matter left to the district court. This makes sense. The sentencing judge is actually in the room and has presided over the case to its conclusion. Indeed, as the Supreme Court noted in *Booker*, it has "never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range." *United States v. Booker*, 543 U.S. 220, 233 (2005).

That discretion was taken from the district courts when Congress passed the Sentencing Reform Act of 1984 and created the United States Sentencing Guidelines. Not only did the district courts lose their discretion to faithfully and particularly administer justice on a case-by-case basis, but also a bureaucracy formed to micromanage sentencing judges. At the same time, appellate courts were empowered to review sentences and write "between the lines" set out by the Sentencing Commission.

That grand experiment to standardize sentences across the country collapsed, and the Supreme Court finally returned sentencing discretion back to the district courts in *Booker*.[2] *Id.* Finding that the Sentencing Guidelines are advisory, the Court held that sentencing judges must

---

[2] *United States v. Rosales-Bruno*, 789 F.3d 1249, 1255 (11th Cir. 2015) ("The reason we give district courts so much discretion in making sentencing decisions is that they have great advantages over appellate courts when it comes to sentencing. One reason is that they do it and we don't." . . . "Another advantage that district courts enjoy when it comes to sentencing is that they have far greater sentencing experience than appellate judges, many of whom have never sentenced a single defendant for a single crime."); *United States v. Vonner*, 516 F.3d 382, 392 (6th Cir. 2008) (en banc) ("One theme runs through" *Rita, Gall,* and *Kimbrough*: "*Booker* empowered district courts, not appellate courts and not the Sentencing Commission." . . . "*Booker* breathes life into the authority of district court judges to engage in individualized sentencing within reason in applying the § 3553(a) factors to the criminal defendants that come before them." . . . "Our affirmance in today's case respects the central lesson from these decisions-that district courts have considerable discretion in this area and thus deserve the benefit of the doubt when we review their sentences and the reasons given for them."); *United States v. Guiterrez*, 635 F.3d 148, 154 (5th Cir. 2011) ("A district court is in a position to hear the evidence, make credibility determinations, and gain insights not conveyed by the record.") (citing *United States v. Williams*, 517 F.3d 801, 812 (5th Cir. 2008)); *United States v. Abu Ali*, 528 F.3d 210, 272 (4th Cir. 2008) (Motz, J., dissenting) ("[The majority] utterly fails to appreciate the importance of the most fundamental of these directives—no longer may appellate courts engage in *de facto de novo* review of district court sentencing determinations. Instead, they must afford true deference to the district court's greater expertise and experience in sentencing" . . . "[The majority] refuses to acknowledge that deference means deference, that discretion means discretion, and that appellate courts exercise only a limited role in reviewing sentences.").

"consider Guidelines ranges" while also tailoring "the sentence in light of other statutory concerns as well." *Id.* at 245.

*Booker*, however, came with a caveat. Appellate courts would retain jurisdiction to review sentences under a "reasonableness" standard. *Id.* at 263. The majority believed that appellate courts, familiar with the standard in myriad contexts, could "iron out sentencing differences." *Id.*

Justice Scalia, dissenting in part, had a different vision of the future. He argued that *Booker*'s appellate review holding would "wreak havoc on federal district and appellate courts quite needlessly, and for the indefinite future." *Id.* at 313 (Scalia, J., dissenting). Maybe, as he suggested, district courts would be discouraged from sentencing outside of Guidelines ranges. *Id.* Or perhaps, appellate review would "add another layer of unfettered judicial discretion to the sentencing process." *Id.* Conceivably, Justice Scalia said, appellate review would be a mere formality, ensuring that "busy district judges say all the right things when they explain how they have exercised their newly restored discretion." To him, *Booker* set the appellate courts on an uncertain path in sentencing. *See also United States v. Cavera*, 550 F.3d 180, 188 (2d Cir. 2008) (en banc) ("*Booker,* however, left unanswered a number of questions, both for sentencing judges and for those charged with the task of reviewing their work on appeal.").

Only two years later, the Supreme Court revisited the standards of sentencing review in the appellate courts. *See Rita v. United States*, 551 U.S. 338 (2007); *Gall v. United States*, 552 U.S. 38 (2007); *Kimbrough v. United States*, 552 U.S. 85 (2007). In *Rita*, the Court held that appellate courts could apply a "presumption of reasonableness" to sentences within the Guidelines range.[3] 551 U.S. at 355–56. In *Gall*, the Court clarified the steps an appellate court must take in reviewing

---

[3] More importantly, the Court affirmed a district court judge that "heard and considered" the defendant's argument for a downward departure but did not explicitly or thoroughly explain why he rejected those arguments. I address this later.

3

a sentence: (1) procedural error analysis[4] then (2) substantive error analysis.[5] 552 U.S. at 51. The Court also held that the substantive reasonableness of a sentence is reviewed under an abuse-of-discretion standard. *Id.* In *Kimbrough*, the Court resolved a circuit split and empowered district courts to vary below the Guidelines if they concluded that the crack/powder cocaine disparity "yields a sentence greater than necessary to achieve § 3553(a)'s purposes, even in a mine-run case." 552 U.S. at 110.

These cases—while finetuning appellate review—emphasized the importance of the district court's discretion. *Gall* considered the district court to be "in a superior position to find facts and judge their import under § 3553(a) in the individual case. The judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record." 552 U.S. at 51 (citation omitted). More than that, sentencing judges have "an institutional advantage over appellate courts . . . especially as they see so many more Guidelines cases than appellate courts do." *Id.* at 52 (quoting *Koon v. United States*, 518 U.S. 81, 98 (1996)). No matter how unique a case may be, that "does not change the deferential abuse-of-discretion standard of review that applies to all sentencing decisions." *Id. See also Kimbrough*, 552 U.S. at 110–11 (The Court approved the district court's 4.5 year below-Guidelines sentence after the sentencing judge properly calculated the Guidelines, considered the Guidelines range, "addressed the relevant § 3553(a) factors," and "appropriately framed its final determination in line with § 3553(a)'s overarching instruction to 'impose a sentence sufficient, but not greater than necessary,' to accomplish the goals advanced in § 3553(a)(2).").

---

[4] Procedural errors include: "failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." *Gall*, 552 U.S. at 598.

[5] To assess substantive reasonableness, the court of reviews should consider "the totality of the circumstances, including the extent of any variance from the Guidelines range." *Id.*

Similarly, *Rita* cautioned appellate courts that the sentencing judge need not write a full opinion in every case. 551 U.S. at 356. The Court's conclusion relied on the circumstances of every criminal defendant and the varied arguments made by counsel.

> The appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon circumstances. Sometimes a judicial opinion responds to every argument; sometimes it does not; sometimes a judge simply writes the word "granted" or "denied" on the face of a motion while relying upon context and the parties' prior arguments to make the reasons clear. The law leaves much, in this respect, to the judge's own professional judgment.

*Id.* A judge's explanation, "even if brief," provides the public and the reviewing courts with a reason for the sentence so that the process may "evolve." *Id.* at 357. The district court is fit for this role and deserving of the discretion because the sentencing judge "has access to, and greater familiarity with, the individual case and the individual defendant before him than the Commission or the appeals court." *Id.* at 357–58.

## II.  APPELLATE REVIEW OF SENTENCINGS TODAY

Fast forward twenty years, and Justice Scalia's fears of "havoc on federal district and appellate courts" have come to pass.[6] *Booker*, 543 U.S. at 312–13. District courts, exercising the autonomy restored in *Booker*, remain subject to the appellate review *Booker* also promised. Carissa Byrne Hessick & F. Andrew Hessick, *Appellate Review of Sentencing Decisions*, 60 Ala. L. Rev. 1, 28–36 (2008) (suggesting that *Gall, Rita,* and *Kimbrough* put the district and appellate courts on a collision course beyond the ordinary understanding of appellate review). That appellate

---

[6] Particularly, I fear that Justice Scalia's prediction that "appellate review for 'unreasonableness' [will] preserve *de facto* mandatory Guidelines by discouraging district courts from sentencing outside Guideline ranges" has come true. *Booker*, 543 U.S. at 313. Often, from the bench, I have commented that Probation, the Government, and defendants usually ask for Guidelines range sentences. Whether it is top of the Guidelines, bottom of the Guidelines, or somewhere in between, the requests and recommendations look the same: a feverish commitment to the *advisory* Guidelines. This coordinated effort is exactly why I always consider each defendant in his own individual circumstances. So too do I consider if a Guidelines sentence is appropriate and reasonable, or if a variance—whether made on a motion by the parties or not—better suits the nature of the offense and the characteristics of the defendant.

review has created its own "Appellate Guidelines"—interpreting the *advisory* Guidelines and *binding* on sentencing judges.

In the search for "reasonable" sentences, the appellate courts have also undermined Congress's intent to standardize sentencing practices.[7] To some, the "courts of appeals have vociferously fought" *Booker*. Alison Siegler, *Rebellion: The Courts of Appeals' Latest Anti-*Booker *Backlash*, 82. U. Chi. L. Rev. 201, 202 (2015). Sometimes that has taken the form of an "inconsistent . . . development of procedural review" and an "even less clearly defined" standard of substantive reasonableness. Morgan Yates, Note, *Truth or Unintended Consequences: Reining in Appellate Court Action in the Absence of a Government Appeal*, 82 U. Chi. L. Rev. 1705, 1710 (2015).

Other times the appellate courts seek out procedural snags "when they wish to reverse sentences based on substance, warping the procedural inquiry." Note, *More Than a Formality: The Case for Meaningful Substantive Reasonableness Review*, 127 Harv. L. Rev. 951, 961 (2014). Still, some do not place blame entirely on the circuit courts who must "apply all of these contradictory

---

[7] M. Jackson Jones, *Determining Whether the Collateral Consequences of a Defendant's Prosecution and Conviction Can Serve as a Basis for a Downward Departure in Federal Sentencing*, 44 Am. J. Trial Advoc. 67, 79 (2020) (arguing for the minority approach of a sentencing standard circuit split); Tim Cone, *Substantive Reasonableness Review of Federal Criminal Sentences: A Proposed Standard*, 33 N. Ill. U. L. Rev. 65, 66–69 (2012) (a circuit split on the scope of substantive reasonableness review); Morgan Yates, Note, *Truth or Unintended Consequences: Reining in Appellate Court Action in the Absence of a Government Appeal*, 82 U. Chi. L. Rev. 1705, 1710 (2015) ("The circuits have been inconsistent in their development of procedural review, but they have generally held procedural reasonableness to require accurate calculation of the Guidelines range as well as clear articulation of the district court's reasons for imposing the sentence in relation to the defendant's specific characteristics and arguments."); Anna Elizabeth Papa, Note, *A New Era of Federal Sentencing: The Guidelines Provide District Judges a Cloak, but is* Gall *Their Dagger?*, 43 Ga. L. Rev. 263, (2008); Craig D. Rust, Note, *When "Reasonableness" is not so Reasonable: The Need to Restore Clarity to the Appellate Review of Federal Sentencing Decisions After* Rita, Gall, *and* Kimbrough, 26 Touro L. Rev. 75, 90–91 (2010) (observing that circuit courts have split into "two camps," one where the courts primarily consider procedural reasonableness and one where the courts effectively re-weigh the facts in front of the district court at sentencing); Michael M. O'Hear, Essay, *Explaining Sentences*, 36 Fla. St. U. L. Rev. 459, 465 (2009) (reviewing the Seventh Circuit's "Cunningham rule" that a district court must explain his acceptance or rejection of a defendant's meritorious argument); Note, *More Than a Formality: The Case for Meaningful Substantive Reasonableness Review*, 127 Harv. L. Rev. 951, 962–64 (2014) (reviewing circuit splits resulting from the "widespread skepticism of substantive reasonableness review, combined with limited Supreme Court guidance); Judge D. Michael Fisher, *Still in Balance? Federal District Court Discretion and Appellate Review Six Years After* Booker, 49 Duq. L. Rev. 641, 657–59 (2011) (reviewing the appellate courts' differing applications of Supreme Court sentencing jurisprudence).

sentencing goals in every case." Craig D. Rust, Note, *When "Reasonableness" is not so Reasonable: The Need to Restore Clarity to the Appellate Review of Federal Sentencing Decisions After* Rita, Gall, *and* Kimbrough, 26 Touro L. Rev. 75, 102 (2010).

Without a doubt, Justice Scalia's fears came true. The appellate courts—in an effort to enforce Supreme Court sentencing jurisprudence—have developed their own requirements, differently, across the country. The Fourth Circuit was not left untouched.

### III. DEFENDANT'S ORIGINAL SENTENCING

I note at the outset, that in *every* sentencing hearing I consider *every* argument from the parties. And I provide ample opportunity for the parties to present their arguments. I receive no less than four non-binding recommendations from (1) the Government, (2) the defendant, (3) the Probation Officer, and (4) the United States Sentencing Guidelines. Each one is helpful in assisting me to determine the appropriate sentence for every individual defendant.[8] And I give each recommendation due consideration in addition to the parties' sentencing memoranda, arguments at the sentencing hearing, and the defendant's allocution.

At the Defendant's original sentencing hearing, I began with the Government's objection to the base offense level. I "thoroughly analyzed" the legal issue presented and sustained the Government's objection. *Shields*, 126 F.4th at 359; *see also* [ECF No. 58, at 4–9] ("*Transcript*"). After completing the Guidelines calculation, I asked both counsel and the Defendant if they had anything they "would like to object to or say with regard to these calculations." *Transcript*, at 11–12. I then asked for any argument on the § 3553(a) factors. *Id.* at 12.

Defendant's counsel then presented his argument for a downward variance. *Id.* Essentially, defense counsel argued that had Mr. Shields been convicted of prior conduct in West Virginia, as

---

[8] To ensure that the government and the defendant adequately address everything relevant to a defendant's sentence, before every sentencing hearing I separately order the parties to fully lay out their arguments. *See* [ECF No. 39].

7

opposed to Ohio, his base offense level would be lower. *Id.* Defense counsel recognized that "we had already addressed" that objection during the court's colloquy during the objections phase of sentencing. *Id.* Defense counsel also addressed other 3553(a) grounds for a downward variance, including the Defendant's background and family support. Lastly, I asked both counsel and the Defendant if they had anything else to say before imposing sentence. *Id.* at 13.

After imposing sentence, I gave my statement of reasons for Mr. Shields's sentence. *Id.* at 15–19. I found that his sentence of 51 months—the bottom of the guideline range—was reasonable and appropriate, especially in light of his other criminal conduct for which he would be serving a long consecutive sentence in state custody. *Id.* at 15. I also considered his "appalling" criminal history and how his past was replete with criminal conduct, indicating a "total disregard for the law." *Id.* at 15–16. So too did I consider his "continued pattern of drug trafficking over a period of more than ten years"—which necessarily includes his prior conduct in Ohio, the basis of his argument for a downward variance. *Id.* at 16–17. Finally, I considered the "difficulty" of the "interaction between a person's criminal history and their current offense and *the circumstances surrounding that prior history*." *Id.* at 17 (emphasis added).

The Fourth Circuit then held that I failed to "adequately address Shields's argument and explain the sentence imposed." *Shields*, 126 F.4th at 357–58. Even though I carefully considered Shields's legal issue, the court found I did not "address or even acknowledge Shields's equitable argument." *Id.* at 361. That, the Fourth Circuit found, was procedural error and that Shields's sentence was procedurally unreasonable. *Id.* at 362.

### IV. PROCEDURAL REASONABLENESS

*Shields* is but one in a long line of Fourth Circuit cases requiring district courts to address

8

a defendant's arguments one-by-one, name-by-name.[9] These cases effectively force district courts to abide by a checklist sentencing script. Concerning, however, is the Supreme Court jurisprudence upon which these cases rely. Under that jurisprudence, district courts are not obligated to conduct formulaic sentencings.

As mentioned, procedural reasonableness came from *Gall*. Ostensibly, the standard for procedural reasonableness considers "whether the district court properly calculated the defendant's advisory guidelines range, gave the parties an opportunity to argue for an appropriate sentence, considered the 18 U.S.C. § 3553(a) factors, and sufficiently explained the selected sentence." *Shields*, 126 F.4th at 360 (citing *United States v. Ross*, 912 F.3d 740, 744 (4th Cir. 2019)). As part of a procedurally reasonable sentence above, below, or within the Guidelines, a district court "must place on the record an 'individualized assessment' based on the particular facts of the case before it." *United States v. Carter*, 564 F.3d 325, 330 (4th Cir. 2009) (quoting *Gall*, 552 U.S. at 597).

Hidden within that standard is the "requirement that a sentencing court 'address the parties' nonfrivolous arguments in favor of a particular sentence, and if [it] rejects those arguments, [ ] explain why in a sufficiently detailed manner to allow [for] meaningful appellate review.'" *Shields*, 126 F.4th at 360 (quoting *United States v. Blue*, 877 F.3d 513, 519 (4th Cir. 2017)). Under this, the district court is obligated to explicitly and specifically address every argument. *United States*

---

[9] *See Shields*, 126 F.4th at 360; *United States v. Smith*, --- F. 4th ---, 2025 WL 1096245, at *11 (4th Cir. Apr. 14, 2025) (collecting cases of a single district court judge not addressing defendant's arguments at sentencing); *United States v. Torres-Reyes*, 952 F.3d 147, 153 (4th Cir. 2020) (The district court adequately addressed the defendant's legal argument, but the Fourth Circuit held that the sentencing judge failed "to make a record indicating that the" equitable arguments for a downward variance "were addressed."); *United States v. Webb*, 965 F.3d 262, 270 (4th Cir. 2020) ("Although we have looked hard for signs" that the district court considered the defendant's non-frivolous arguments, "we have come up mostly empty."); *United States v. Ross*, 912 F.3d 740, 745 (4th Cir. 2019) ("[T]he district court did not provide an individualized assessment regarding important mitigation evidence" of the defendant's mental health.); *United States v. Blue*, 877 F.3d 513, 519 (4th Cir. 2017) (Although the district court specifically referenced two of the defendant's sentencing arguments, the court erred when it failed "to acknowledge of address" the six other "nonfrivolous arguments for a downward departure"); *United States v. Lynn*, 592 F.3d 572, 582 (4th Cir. 2010) (The district court failed to address the defendant's argument and provided "no explanation at all for a substantially above-Guidelines sentence.").

*v. Lynn*, 877 F.3d 513, 519 (4th Cir. 2017). A passing reference to an argument is not enough. *Id.* (a within-Guidelines sentence was procedurally unreasonable even when the court made a passing reference to an argument for a downward departure).

And by *every* argument, the Fourth Circuit really means *every* argument. In *United States v. Blue*, the district court procedurally erred when it explicitly referenced only two of the defendant's eight arguments for a downward variance. *Blue,* 877 F.3d at 519. The district court stating that it had considered the arguments, the § 3553(a) factors, and the Guidelines was not enough to assure the appellate court that it had, in fact, considered those things. *Id.*

Of course, explaining the court's response to every argument would not be a legal requirement without exceptions. One exception relevant to *Shields* is that acceptance or rejection of a legal argument may simultaneously explain the court's response to an equitable argument. "Circumstances can exist in which rejecting a legal objection makes clear that a related argument for a variance is also rejected." *United States v. Torres-Reyes*, 952 F.3d 147, 152 (4th Cir. 2020) (citing *Blue*, 877 F.3d at 521).

Another exception is that sometimes the reasoning of the district court is obvious, especially when taken in the context of the sentencing judge's job. The Fourth Circuit said that it

> will not vacate [a] sentence simply because the [district] court did not spell out what the context of its explanation made patently obvious: namely, that a shorter prison term was inappropriate for a defendant who had repeatedly committed a serious offense and who had already proven immune to other means of deterrence.

*United States v. Montes-Pineda*, 445 F.3d 374, 381 (4th Cir. 2006).[10] After all, appellate review of a sentencing explanation is "not limited to the court's statements at the moment it imposes sentence." *United States v. Nance*, 957 F.3d 204, 213 (4th Cir. 2020). "The context surrounding a

---

[10] *United States v. Montes-Pineda*, 445 F.3d 374, 381 (4th Cir. 2006) ("To be sure, the court could have said more to explain the sentence that it imposed. But the explanation that it did give, in the context of the undisputed record, provides an adequate basis for us to evaluate the reasonableness of [the defendant's] sentence.").

district court's explanation may imbue it with enough content for [the court of appeals] to evaluate both whether the court considered the § 3553(a) factors and whether it did so properly." *Montes-Pineda*, 445 F.3d at 381.

In the same way—although somewhat contrary to the *Shields* and *Blue* decisions—the Fourth Circuit has refrained from requiring a check-list sentencing hearing. The appeals court itself has rejected arguments for a "roll call" styled sentencing hearing where the court "simply exalt[s] form over substance." *United States v. Johnson*, 445 F.3d 339, 345 (4th Cir. 2006) ("We see no reason to countenance pointless remands when the record shows that the § 3553(a) factors were adequately and properly considered.") (quotation omitted).

Compare the Fourth Circuit's jurisprudence to the Supreme Court's. The Court does not require an explicit explanation. Michael M. O'Hear, Essay, *Explaining Sentences*, 36 Fla. St. U. L. Rev. 459, 469 (2009) ("In sum, *Rita* effectively transformed a requirement for explicit explanation into a requirement for no more than implicit explanation."). As the Supreme Court held, a judge is required to "state" his "reasons" as a "judge's use of reason underlies the public's trust in the judicial institution." *Rita*, 551 U.S. at 356 (citing 18 U.S.C. § 3553(c) ("The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence.")).

But neither the Supreme Court nor any statute insists "upon a full opinion in every case." *Id.* At times, a judge responds to every argument, and other times he does not. *Id.* Still, there are occasions where the words "granted" and "denied" speak for themselves when viewed in the context of "the parties' prior arguments." *Id.* In the face of "nonfrivolous reasons for imposing a different sentence," a judge may go further, but he need not when circumstances and the entire record "call for a brief explanation." *Id.* at 357.

So, what was the problem in *Rita*? In light of the defendant's arguments for a sentence below the Guidelines, the judge rejected those arguments without explicitly addressing them. *Id.* at 358 ("The judge then simply found these circumstances insufficient to warrant a sentence lower than the Guidelines range."). The Supreme Court, however, affirmed. *Id.* at 359. The Court found sufficient that the "sentencing judge listened to each argument," "considered the supporting evidence," understood the defendant's employment history and military service, and was aware of the defendant's physical ailments.[11] *Id.* at 358. This makes sense. Procedural reasonableness requires the district court to properly calculate the Guideline range, treat the Guidelines as advisory, consider the § 3553(a) factors, impose a sentence based on facts, and adequately explain the chosen sentence. *Gall*, 552 U.S. at 51. Hearing the arguments presented and considering the evidence necessarily informs the court's imposition of a sentence.

Sure, the judge "might have said more." *Rita*, 551 U.S. at 359. But in a "conceptually simple" case where the record made clear that "the sentencing judge considered the evidence and arguments," there was no error. *Id.* Even though the judge did not "explicitly" remark "that he had heard and considered the evidence and argument." *Id.* Even though he did not say that he thought the Guidelines range was proper in "the mine run of" similar cases. *Id.* Even though he did not put on the record that he thought the defendant's "personal circumstances" were "not different enough to warrant a different sentence." *Id.* The law does not require a judge to write more extensively.[12]

## V.  CONCLUSION

Justice and fairness are not to be found in a mechanical sentencing regime.[13] Nor would

---

[11] *Compare with Blue*, 877 F.3d at 520 (The Fourth Circuit has held that "providing the defendant with ample opportunity to present arguments and properly considering those arguments are separate requirements of procedural reasonableness.").

[12] Although, I am sure the Fourth Circuit today would require a greater explanation from the *Rita* sentencing judge.

[13] And in the past, the Fourth Circuit has agreed. *Lynn*, 592 F.3d at 576 ("But we have also held that in explaining a sentencing decision, a court need not 'robotically tick through § 3553(a)'s every subsection,' particularly when imposing a within-Guidelines sentence." (quoting *Johnson*, 445 F.3d at 345)).

the defendant or the public benefit from such a rigid hearing. That is why I make an individualized assessment of every criminal defendant, from the beginning of his case to the end. This is informed by every argument in every sentencing memorandum, every argument at the hearing, the presentence report, the observed demeanor of the defendant, and the nature and characteristics of his offense. These matters often appear separately, obvious to me but sometimes scattered in the record. A carefully considered, individualized assessment does not fit neatly in a checkbox.

Every district court in the country feels deeply the responsibility that is inherent in handing down a sentence. The decision is always exceptionally personal. There is no joy in stripping away a citizen's freedoms. It must be done, however. Punishment for crimes committed is a necessary part of living in a civilized society.

The judge's role in all of this is a great responsibility that cannot be taken lightly. To require recitation of all matters considered and decided would set the district courts on a path of performative process and bureaucracy. Every sentence is tailored to the defendant who stands before the court. We are empowered to conduct personalized assessments of each criminal defendant. As we always have. As we always will.

The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion to the defendant and counsel, the United States Attorney, the United States Probation Office, and the United States Marshal.

The court further **DIRECTS** the Clerk to post a copy of this published Memorandum Opinion on the court's website, www.wvsd.uscourts.gov.

ENTER:     April 24, 2025

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

13